**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALTEX MANUFACTURING CO., Inc., Artex Corp., and Metal Masters, Inc., Division of Arnold Altex Aluminum Co., Respondent.**

No. 8579.

United States Court of Appeals Fourth Circuit.

Argued June 5, 1962.

Decided Sept. 18, 1962.

Melvin Pollack, Atty., N. L. R. B. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allison W. Brown, Jr., Atty., N. L. R. B., on brief), for petitioner.

Daniel R. Coffman, Jr., Jacksonville, Fla. (Hamilton & Bowden, Jacksonville, Fla., on brief), for respondent.

Before BOREMAN, BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

Good faith bargaining was lacking, the National Labor Relations Board has found, on the part of Altex Manufacturing Co., Inc., Artex Corporation and Metal Masters, Inc., Division of Arnold Altex Aluminum Company—collectively designated Altex—in negotiating for a new contract with their employees at Summerville, South Carolina. International Association of Bridge, Structural and Iron Workers Union, AFL–CIO, represented the employees. An unfair labor practice was consequently adjudged against Altex under Section 8(a) (5) and (1) of the National Labor Relations Act [1] and the companies were ordered to cease and desist from refusing to bargain in good faith on a new contract and to refrain from offending the Act in related particulars.

Enforcement of this order will be granted, as the Board now petitions, for we agree that Altex has unreasonably procrastinated and obstructed the bargaining. Only two witnesses were called, a company vice president Beauchene and Rutherford, a union representative. But there is evidence in plenty to establish the facts deduced by the Board and now recounted. They securely undergird the Board's orders.

Collective bargaining contracts had existed between Altex and the union ever since 1955. The 1959 contract expired on November 30, 1959, the union presumably giving prior notice of the termination. Toward a new contract Beauchene for the company and union's Rutherford began negotiations on January 12, 1960, intending the new contract to retroact to December 1, 1959. The company was satisfied with the old contract and wanted it repeated without change for another year, from December 1, 1959 through November 30, 1960. But the union desired to improve wage and other stipulations of employment, concessions it did not wish postponed. At the conference the union rejected the proposal of the employer to rewrite the contract for one year "with a wage reopener on June 30, 1960" which would have allowed exploration of a wage increase after that date. Countering, the union suggested that the expired contract be renewed, but with a termination date of June 30, 1960.

Understanding the company had consented to the last proposal, Rutherford on January 27, 1960 sent Beauchene a draft of a corresponding agreement. Beauchene declined to execute it. On word of his refusal, Rutherford telephoned him January 28, inquiring why he would not sign. Beauchene replied that he had agreed simply to an extension of the old contract for a year. Thereupon Rutherford evidently convinced him that his recollection was in error, for Beauchene executed the agreement. According to Rutherford, however, Beauchene said he would sign only on the condition that "come June 30th negotiations up to or thereafter, if we have to run over the expiration date, we will not have to negotiate anything but wages or monetary issues". Beauchene stated further, Rutherford testified, "[W]hen June 30, 1960, comes, we will not have to go through with anything else, because I like this agreement * * *".

Rutherford then prepared twelve copies of an agreement to run from July 1, 1960 to June 30, 1961. This draft was in all respects like the expired agreement except it left the wage stipulation blank. None of the copies was at that time delivered to Beauchene. They were filed in the union office, Rutherford said, "to be used any time we reached an agreement on wages".

Then began the series of meetings on which the Board bases the violation. On May 27, 1960, an hourly wage increase of 20 cents and a 5-cent advance in the

1. 29 U.S.C.A. § 158(a) (5) and (1).

health and welfare fund were asked by the union. These Beauchene declared unacceptable. Only monetary items were discussed, with the union ultimately stating its willingness to settle for what the company could afford. They met again on June 23rd. In answer to the reiterated request for the increases, the company responded that until its board of directors met—as shortly scheduled—it could not determine its ability to meet the demands. The company refused to allow an accountant for the union to inspect and report on its books.

July 8, 1960 saw the representatives again conferring and the company now consented to the examination of its books. September 22nd was the next meeting. Wages and the health and welfare fund were considered but nothing else. Beauchene stated that he expected his board of directors to convene on October 4 and after that maybe an offer could be made to the union. At a session on November 16 Beauchene reported that the directors had not yet met and he could make no offer. He did suggest an agreement effective December 1, 1960 for the ensuing year, containing the same terms as the former contract. Declining, Rutherford unsuccessfully proposed a 5-cent wage and 2-cent health and welfare increase. The Trial Examiner found there was a meeting on December 21, 1960 after requests by Rutherford and the union. The positions of company and union remained unchanged. Then in a letter of December 23, 1960 to the union, the attorney for Altex suggested a meeting date of January 10, 1961. That the negotiations were "to be conducted only on monetary items", as the request of the union for further negotiations had recited, the letter denied. Rather, the attorney announced "our position [is] that the contract is open in all respects and we intend to present to you a complete proposal after receiving your proposal * * *".

Meeting on January 10, 1961, Rutherford brought out the twelve-copy paper drawn in February 1960. The attorney termed it a proposal. Rutherford, telling of its history, replied it was not a proposal but a draft of an agreement incomplete only in regard to wages and health and welfare funds. Nothing was accomplished at this meeting.

On February 28, the company offered a proposal consisting of extensive changes in the expired contract, but left the union's proposed wage increase untouched. Rutherford again stated the union's understanding that everything except monetary issues had been settled previously, adding that nothing would be achieved through discussion of the company's proposals. He reduced the union's demand to a total increase of 3 cents per hour in the form of additional holiday pay, and health and welfare coverage. On March 1, this too was rejected in a meeting which brought the parties no closer together.

Thus chronicled, the findings of the Board are well underpinned by the evidence. They speak the company's unwarranted procrastination. From January 1960 until the attorney's letter in December of that year, the company mentioned no differences save the money items. Beauchene concededly knew in June 1960 that money was not the only subject in the previous agreement the company would urge for modification in the new pact. Yet no other differences were divulged to the union. Delay and delay of the directors' meeting without explanation of itself illustrates the company's dilatoriness and impeding of the bargaining process.

We have no hesitancy in upholding the conclusion of the Board that the company has been guilty of unfair labor practices as they are defined in Section 8(a) (5) and (1) of the National Labor Relations Act. The order passed by the Board is justified and appropriate. It will be enforced.

Order enforced.